[979 NYS2d 367]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JARROD BROWN, Respondent.

Second Department, January 29, 2014

**APPEARANCES OF COUNSEL**

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Castellano, Johnette Traill* and *Jessica L. Zellner* of counsel), for appellant.

*Steven Banks*, New York City (*David Crow* of counsel), for respondent.

**OPINION OF THE COURT**

COHEN, J.

On this appeal, we are asked to consider whether a parolee is in the "custody" of the New York State Department of Corrections and Community Supervision (hereinafter DOCCS) within the meaning of CPL 440.46 (1), which allows a person serving a sentence for a class B drug felony committed prior to 2005 to apply for resentencing. For the reasons stated below, we agree with the Supreme Court's determination that the statute, as amended in 2011, does not distinguish between defendants who are incarcerated and those who are on parole for purposes of determining custodial eligibility. Accordingly, a parolee is in the custody of DOCCS within the meaning of CPL 440.46 (1), and the resentence appealed from should be affirmed.

Drug Law Reform Act

In 1973 the New York State Legislature passed a series of bills that came to be known as the Rockefeller Drug Laws (*see* L 1973, chs 276, 277, 278, 676, 1051). In 2004 the legislature began to reform the Rockefeller Drug Laws, which had generated controversy for many years. In doing so, the legislature recognized that the Rockefeller Drug Laws "provide inordinately harsh punishment for low level non-violent drug offenders, warehouse offenders in state prison who could more productively be placed into effective drug treatment programs[,] and waste valuable state tax dollars which could be used more effectively to provide drug treatment to addicts" (Assembly Mem in Support, Bill Jacket, L 2004, ch 738 at 6).

The most recent drug reform legislation, the Drug Law Reform Act of 2009 (hereinafter the 2009 DLRA), codified in

part at CPL 440.46, allows certain persons sentenced under the Rockefeller Drug Laws to apply to be resentenced under the current, less severe, sentencing regime. As originally enacted, the statute, in relevant part, qualified an individual eligible to be resentenced as, "[a]ny person in the custody of the department of correctional services" who had been convicted of a designated class B felony offense prior to January 13, 2005, who was serving an indeterminate sentence with a maximum term of more than three years, and who had not been convicted of an "exclusion offense" as defined by that statute (L 2009, ch 56, § 1, part AAA, § 9 [enacting CPL 440.46 (1)]). At that time, parolees were in the "legal custody" of the division of parole (Executive Law § 259-i [former (2) (b)]) and thus were not in the custody of the department of correctional services. Accordingly, only incarcerated offenders, and not offenders released on parole, were eligible to apply for resentencing (see People v Santiago, 17 NY3d 246, 247 [2011]; People v Paulin, 17 NY3d 238, 243 [2011]).

In 2011, a New York State budget enactment consolidated and modernized several state agencies and created new departments (see L 2011, ch 62). This legislation merged the New York State Department of Correctional Services and the New York State Division of Parole into a single agency, the New York State Department of Corrections and Community Supervision (see id.). At that time, CPL 440.46 (1) was amended by changing "department of correctional services" to "department of corrections and community supervision," so that now "[a]ny person in the custody of the department of corrections and community supervision," otherwise qualified, could apply to be resentenced (CPL 440.46 [1]).

Factual and Procedural History

In the instant case, the defendant was convicted in 2002 of criminal sale of a controlled substance in the third degree, and was sentenced to an indeterminate term of imprisonment of 6 to 12 years. After nearly eight years of incarceration, the defendant was conditionally released on parole on April 15, 2011, with a maximum expiration date of July 16, 2017. Following the 2011 amendments to CPL 440.46 (1), which became effective on March 31, 2011, the defendant moved to be resentenced pursuant to that statute. The People opposed the motion, inter alia, on the ground that because the defendant was not incarcerated at the time he filed his motion, he was not in the custody of DOCCS within the meaning of the statute. By order dated July

31, 2012, the Supreme Court found that the language of the statute, as amended, did not distinguish between offenders who were incarcerated and those who were on parole, and therefore the defendant was eligible to apply for resentencing. The court further found that substantial justice did not dictate denial of the motion because the defendant's criminal history showed him to be a low-level drug offender whose crimes stemmed from a strong drug addiction rather than from a violent propensity. Accordingly, the court granted the defendant's motion and resentenced him to a determinate term of imprisonment of seven years, and three years of postrelease supervision. As a result, the maximum expiration date of the defendant's sentence became July 16, 2012. The People appeal.

The sole issue raised by the People on appeal is whether the defendant was excluded from applying for resentencing relief because he was on parole, and not incarcerated, at the time he made his motion. We hold that he was not, and the Supreme Court was not precluded, on that ground, from considering his motion.

Analysis

Nonincarcerated parolees satisfy the "in custody" eligibility requirement of CPL 440.46 (1), as amended, based on the plain language of the statute.

In statutory construction, courts are obliged to interpret a statute to effectuate the intent of the legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used (see People v Williams, 19 NY3d 100, 103 [2012]; People v Kisina, 14 NY3d 153, 158 [2010]; Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335 [2003]; Riley v County of Broome, 95 NY2d 455, 463 [2000]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; Doctors Council v New York City Employees' Retirement Sys., 71 NY2d 669, 675 [1988]). The plain language of CPL 440.46 (1) encompasses "[a]ny person in the custody of [DOCCS]." According to Executive Law § 259-i (2) (b), a nonincarcerated parolee is within the legal custody of DOCCS. Thus, a plain reading of the statute leads to the conclusion that a nonincarcerated parolee is eligible to apply for resentencing under the statute. Had the legislature intended to limit custodial eligibility to the subset of incarcerated offenders in DOCCS custody, it would have so provided.

Yet, the People contend that the legislature limits its use of the term "custody" to refer to persons actually incarcerated,

and employs terms such as "supervision" when referring to the department's relationship to parolees. This contention is belied by the language of Executive Law § 259-i (2) (b), which states that a parolee, among others, shall be in the "legal custody" of DOCCS until, among other possibilities, "return to imprisonment in the custody of the department," and by other statutes in which the use of the term "custody" plainly refers to something other than incarceration (*see e.g.* Correction Law § 275 [using both "legal custody" and "custody" in reference to a person who has been granted conditional release]; CPL 410.50).

Moreover, neither the legislative history of the subject statute nor the People's reliance on the Court of Appeals opinion in *Matter of Hawkins v Coughlin* (72 NY2d 158 [1988]) compel a different conclusion. In *Matter of Hawkins v Coughlin*, the petitioner was on parole for a robbery conviction when he was arrested for a second offense. The petitioner's robbery conviction was subsequently reversed on the ground that it had been unconstitutionally obtained. Following the reversal of his robbery conviction, the petitioner sought credit for the time he served on that conviction toward satisfaction of the sentence imposed upon his conviction for the second offense. He maintained that he was entitled to a credit pursuant to Penal Law § 70.30 (3) because he was still in "custody" within the meaning of that statute when he committed the second offense. In determining that the petitioner was not entitled to a credit pursuant to Penal Law § 70.30 (3), the Court of Appeals held that the term "custody," as used in that statute, meant " 'confinement' or 'detention' under guard and not 'constructive custody' such as release on parole or bail" (72 NY2d 158, 162). The Court rejected the petitioner's claim that "custody" as used in Penal Law § 70.30 (3) included the "legal or constructive custody of the Division of Parole" (*id.* at 162). In concluding that "custody" was limited to actual confinement or detention, the Court referred to the legislative history of the statute, which showed that the former statute had specifically referred to "confinement" and "time spent" in named institutions, and when the statute was amended, only "minor changes" were contemplated to eliminate the enumeration of specific institutions (*id.*). The Court found it apparent that the legislature intended the provision to apply "only to time spent in some type of 'actual' custody" (*id.* at 163). The Court of Appeals decision in *Hawkins* is not determinative of the instant matter

because the *Hawkins* decision was made while considering the purposes of Penal Law § 70.30 (3) and its statutory history only. Its holding was simply that "custody" as used in Penal Law § 70.30 (3) does not include constructive custody. The Court did not hold that "custody" definitively and always means incarceration. The legislative history of the statute at issue here differs from that attributed to Penal Law § 70.30 (3).

Furthermore, a literal reading of the statute to include parolees does not frustrate the statutory purposes (*cf. Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman*, 52 NY2d 463, 471 [1981]). As noted above,

> "[t]he purpose of the 2009 DLRA, like that of its predecessors, the 2004 and 2005 DLRAs (L 2004, ch 738; L 2005, ch 643), was to grant relief from what the Legislature perceived as the 'inordinately harsh punishment for low level non-violent drug offenders' that the Rockefeller Drug Laws required" (*People v Paulin*, 17 NY3d 238, 244 [2011], quoting Assembly Mem in Support, Bill Jacket, L 2004, ch 738 at 6).

The legislature did not grant this relief all at once, but rather, enacted successive layers of reform, affecting first those on whom the burden of "inordinately harsh punishment" fell most heavily, namely, inmates convicted of class A-I drug felonies. It is entirely consistent with this history that when parolees came within the custody of DOCCS, the legislature would choose not to exclude them from resentencing relief. The People have pointed to no policy reason why parolees should be denied such relief, which, as the defendant observes, is available to parole violators (*see People v Paulin*, 17 NY3d 238 [2011]) as well as offenders who are released to parole while a resentencing application is pending (*see People v Santiago*, 17 NY3d 246 [2011]).

Additionally, contrary to the People's contention, the 2011 amendments were not purely budgetary or technical changes. In expressing its intent in enacting the 2011 amendments, the legislature cited "the evolution of the sentencing structure" toward a "focus on reentry," and thus the need to "provide for a seamless network for the care, custody, treatment and supervision of a person, from the day a sentence of state imprisonment commences, until the day such person is discharged from supervision in the community" (L 2011, ch 62, § 1, part C, § 1, subpart A, § 1). Thus, as a consequence of the merger, "an individual is within the custody of DOCCS, maintaining a single

continuous, nontransferrable relationship with [that] agency" until the termination of the sentence imposed (*People v Pomales*, 35 Misc 3d 444, 448 [2012]). There is no reason to adopt a more restrictive meaning of CPL 440.46 when to do so would contravene legislative intent. The legislature clearly intended that lengthy sentences be replaced by shorter ones as a matter of course and that only in exceptional cases, in which the People can show that substantial justice dictates that a defendant not be resentenced, should he or she be deprived of the ameliorative effect of the statute. Thus, a presumption exists in favor of granting a motion for resentencing (*see People v Concepcion*, 85 AD3d 811 [2011]; *People v Beasley*, 47 AD3d 639 [2008]). To hold that CPL 440.46 prevents the resentencing of defendants on parole would be inconsistent with the statute's remedial objective (*see People v Lexington Sixty-First Assoc.*, 38 NY2d 588, 595 [1976] [remedial statute "should be liberally construed in order that its beneficent purpose may, so far as possible, be attained"]).

We therefore conclude that a parolee is in the custody of DOCCS within the meaning of CPL 440.46, so the Supreme Court was not precluded, on that ground, from considering the defendant's motion.

Accordingly, the resentence is affirmed.

ENG, P.J., RIVERA and LOTT, JJ., concur.

Ordered that the resentence is affirmed.